# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOROTHY DENISE MURRAY, ) | 1:10cv01377 DLB |
| ) | |
| ) | |
| Plaintiff, ) | ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| ) | |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## BACKGROUND

Plaintiff Dorothy Denise Murray ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.

## FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed her application on August 1, 2006, alleging disability since December 1, 1991, due to scoliosis, right leg pain and back problems. AR 140-147, 153. After her application was denied initially and on reconsideration, Plaintiff requested a hearing before an

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

Administrative Law Judge ("ALJ").  AR 87, 96, 118.  ALJ Christopher Larsen held a hearing on April 17, 2009, and issued a decision denying benefits on June 10, 2009.  AR 8-19, 37-69.  The Appeals Council denied review on June 4, 2010.  AR 3-5.

Hearing Testimony

ALJ Larsen held a hearing on April 17, 2009, in Fresno, California.  Plaintiff appeared with her attorney, Melissa Proudian.  Vocational expert ("VE") Thomas Dachelet also appeared and testified.  AR 37.

Plaintiff testified that she was 39 years old at the time of the hearing.  She was five feet, five inches tall and weighed 270 pounds.  AR 41-42.  Plaintiff lives with her eleven year old daughter.  AR 42.  She has never had a driver's license and if she needs to go somewhere, she either gets a ride or uses public transportation.  Plaintiff completed the tenth grade and received her GED in 1989.  AR 43.

Plaintiff last worked in 1991, when she worked at Parks and Recreation for the summer.  AR 44.  Plaintiff believed that she could not work because she gets depressed when she sees other people doing things that she cannot.  She also has scoliosis and rheumatoid arthritis and cannot sit or stand too long.  She is always in pain.  AR 45.  Plaintiff also has problems with asthma, carpal tunnel syndrome and anxiety.  AR 45.

Plaintiff explained that the pain is primarily in her lower back.  She also has rods and pins in her right leg for injuries sustained in a 1992 car accident.  AR 46.  Plaintiff's back pain is like "flames" and it is constant.  Plaintiff rated her pain at a ten out of ten, with a ten defined as needing to go to the emergency room.  She receives shots and medication from her doctor, and last had a shot in her back last month.  AR 47-48.  The shots do not help.  AR 48.  She also tried physical therapy and a TENS unit, but they did not help.  AR 53.  Plaintiff was taking Vicodin, Soma and Neurontin, though the medications only help for about an hour.  AR 48.  Plaintiff thought that Neurontin makes her short of breath, but it could be from her asthma.  AR 49.

Plaintiff estimated that she could sit in a chair for about ten minutes at a time and stand for about ten minutes at a time.  AR 50.  She did not think that she could walk a quarter of a block and could lift less than ten pounds.  Plaintiff also testified that she can't think straight, and

she did not know if this was the result of the pain or her medications. AR 51. She could not focus for more than ten minutes. AR 51. She can sometimes bend over, but then she gets stuck. Plaintiff can put on her shirts and her daughter helps her with her pants. AR 52. Plaintiff also has trouble getting in and out of the bathtub, getting off the toilet and getting out of bed. AR 52. She goes up stairs slowly because of the rod in her leg. AR 54.

During the day, Plaintiff lays down for eight to nine hours because she doesn't sleep at night. She tries to take sleeping pills at night, but she just gets right back up. AR 54-55.

Plaintiff's right ankle turns in and is numb. Every other day, she has no feeling in her toes. Plaintiff has to elevate her leg all day while she lays down. AR 55. She also gets short of breath daily if she moves around too much or smells chemicals or cigarettes. AR 56. She uses a nebulizer and inhalers three times a day. AR 56.

Plaintiff also has carpal tunnel syndrome in both hands, but mainly in the right. The area from her thumb to her wrist is constantly numb and she cannot hold things. AR 58-59. The numbness also travels up her right arm. Plaintiff cannot hold anything with her right hand and can lift things with the help of her left hand. AR 60. Plaintiff can hold a toothbrush with her right hand and can zipper a zipper, but she has a numb, painful feeling. AR 61.

Plaintiff has pain in her arms and legs, as well as headaches every other day. AR 61. The headaches last about an hour and Plaintiff takes Extra Strength Tylenol to treat them. AR 61. Plaintiff also suffers from anxiety and depression daily. Plaintiff was receiving mental health treatment, but it did not help. She now only takes the medication from her doctor. The medications makes her feel much better. AR 62-63.

Plaintiff does not cook or clean and she shops using the "buggy." During the day, she just watches television and stays on the telephone. She also goes to church. AR 63.

For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age, education and work experience. This person could perform light physical exertion, but only if she is allowed to sit or stand at will throughout the workday. This person could never climb ladders, ropes or scaffolds, can occasionally stoop, crouch and climb ramps or stairs and can frequently balance, kneel or crawl. This person must avoid concentrated exposure to fumes,

odors, dusts, gases and poor ventilation. The VE testified that this person could perform the full world of unskilled, sedentary work and a diminished world of light work with a sit/stand option. For example, this person could perform the positions of bagger, garment sorter and grader. AR 65-66.

For the second hypothetical, the ALJ asked the VE to assume that in addition to the customary two breaks and a meal period, this person needed additional unscheduled breaks of three to four hours per day. The ALJ testified that this person could not work. AR 66-67.

Medical Record

X-rays of Plaintiff's chest taken on January 30, 2003, revealed a "marked S-type rotoscoliosis of the visualized spine with the upper convexity to the right and the lower convexity to the left." AR 248.

X-rays of Plaintiff's chest taken on November 18, 2003, after Plaintiff complained of chest pain, were negative. AR 473.

From January 2003 through February 2006, Plaintiff was seen by doctors at San Joaquin Medical Center for chest pain, back pain, numbness, headaches, anxiety and depression. AR 233-249.

X-rays of Plaintiff's right leg taken on May 24, 2005, showed a healed fracture in the mid-shaft of the tibia and fibula. There were mild hypertrophic changes of the articular margins. AR 249.

On October 17, 2005, Carlos L. Cordoba, M.D., completed a Verification of Physical/Mental Incapacity for General Assistance. He opined that Plaintiff could not perform work. She had a partial capacity to lift up to ten pounds and continuously sit and stand. He opined that this disability was permanent. AR 241.

Plaintiff began treating with Nicholas Orme, M.D., on October 27, 2006. AR 446. During the examination, Plaintiff had decreased range of motion in her back, pain and swelling in her bones/joints and rhonci sounds in her lungs. She was prescribed Vicodin and Soma, as well as other medications for other ailments. AR 446.

On November 30, 2006, Plaintiff saw Rustom F. Damania, M.D., for a consultive physical examination. Plaintiff complained of constant back pain because of scoliosis and a 1979 car accident, as well as right leg pain after a fracture in 1992. She also complained that all of her joints hurt and indicated that she was diagnosed with rheumatoid arthritis in 1979. AR 250.

On examination, Plaintiff was obese and seemed to be in distress and discomfort. She was reluctant to do ranges of motion and groaned and moaned throughout the examination. Plaintiff explained that she needed a cane due to muscle spasms in her right leg. Pulses, coordination and gait/station were normal. None of Plaintiff's joints had any ankylosis, deformities, subluxations or contracture. Her joints also showed no sign of acute or chronic inflammation. There was no objective evidence for spasms and no scoliosis. Straight leg raising was normal. Plaintiff had normal range of motion in her wrists and grip strength was 5/5. Phalen sign was negative. Her sensory system was normal. AR 251-252.

Dr. Damania diagnosed obesity, multiple arthralgias, etiology undetermined, controlled hypertension and an old fracture of the right lower leg with no deformities. He believed that Plaintiff could lift twenty pounds occasionally and ten pounds frequently, sit for six hours and stand/walk for six hours. There was no objective evidence to indicate the necessity for an assistive device. There was no definite objective evidence for manipulative limitations, though subjectively, Plaintiff did not do much range of motion of the shoulders. There was no objective evidence for postural limitations, though Plaintiff would not voluntarily do ranges of motion very well. AR 253.

Also on November 30, 2006, Plaintiff saw Shireen R. Damania, M.D., for a psychiatric consultation. Plaintiff was cooperative during the interview, though she stood up during the course of the interview because she indicated that she could not sit or stand for long periods of time. Plaintiff reported that she felt depressed due to her medical problems. Plaintiff used a cane because, according to her, her body is "one sided" and her "left side is messed up." Plaintiff was taking Prozac prescribed by her primary care physician and was not seeing a therapist or a psychiatrist because she had tried in the past and was not satisfied. AR 254-255.

On mental status examination, Plaintiff was mildly drowsy and walked slowly. Her mood was mildly depressed and her affect was appropriate. Impulse control and frustration tolerance were within normal limits. There was no evidence of a thought disorder and she was oriented to time, person and place. Memory for recent and past recall was intact. Her attention span was within normal limits and she was of average intelligence. AR 256-257.

Dr. Damania diagnosed a mood disorder, due to general medical condition, with depressive features. Her level of psychosocial stressors was mild. She opined that Plaintiff could understand, remember and carry out three and four step job instructions in a work-like setting. She could respond appropriately to co-workers, supervisors and the public. Plaintiff could also respond appropriately to usual work situations and deal with changes in a routine work setting, with normal supervision. Plaintiff's drowsiness was due to medications, which Plaintiff explained make her "highly medicated." AR 256-257.

Plaintiff returned to Dr. Orme on December 22, 2006, and complained of chest pain, shortness of breath and leg pain. Her lungs were clear, though her back was tender. He diagnosed chest pain/shortness of breath, tachycardia, controlled asthma, low back pain and muscle spasms and leg pain. An ECG was negative. AR 443.

Plaintiff saw Dr. Orme on January 22, 2007, and complained of shortness of breath, low back pain, difficulty sleeping, and anxiety. She was wheezing upon examination. AR 442.

On January 22, 2007, State Agency physician W. G. Jackson completed a Physical Residual Functional Capacity Assessment. Dr. Jackson opined that Plaintiff could lift twenty pounds occasionally, ten pounds frequently, stand and/or walk for six hours and sit for six hours. She could occasionally climb ramps or stairs, stoop and crouch, but could never climb ladders, ropes or scaffolds. Plaintiff could frequently balance, kneel and crawl and had to avoid concentrated exposure to fumes, odors, dusts, gases and poor ventilation. AR 260-264.

On February 6, 2007, and June 27, 2007, State Agency physicians opined that Plaintiff did not have a severe mental impairment. AR 268-280, 281-294.

On December 12, 2007, Plaintiff underwent x-rays of her left foot. The test revealed small plantar and Achilles spurs, but no acute bony injury. AR 447. X-rays of her right hip and right knee taken the same day were negative. AR 448, 449.

X-rays of her lumbar spine also taken on December 12, 2007, showed marked limited visualization of T12, L1 and L2 vertebral bodies due to Plaintiff's body hiatus. The remainder of the lumbar vertebral bodies demonstrate normal height with no evidence of compression fracture or subluxation. There were no changes of degenerative disc disease at the L5-S1 level. A CT scan of the lumbar spine was recommended for further evaluation. AR 450.

X-rays of Plaintiff's right leg also taken on December 12, 2007, revealed a healed mid-right tibia and fibular fracture with an intramedullary rod. Bone alignment was good in both bones. AR 451.

On March 17, 2008, Plaintiff saw Dr. Orme. He diagnosed degenerative joint disease in the lower back, chronic bronchitis, tension headaches and GERD. The report did not contain examination findings. AR 434.

Plaintiff returned to Dr. Orme on April 16, 2008. He diagnosed degenerative joint disease in the lower back, chronic bronchitis, allergic rhinitis, major depression and GERD and prescribed numerous medications. AR 433.

A treatment note from Dr. Orme dated June 21, 2008, stated, "see physical exam sheet," though no sheet was attached. AR 431.

Plaintiff continued to see Dr. Orme in July, September, October and November 2008. She continued to complain of back pain and her medications were refilled. AR 426-429.

On November 22, 2008, Dr. Orme completed a Questionnaire in which he opined that Plaintiff could not work because of "crippling" degenerative joint disease. He listed x-rays and physical examinations as support for his opinion. Dr. Orme opined that Plaintiff could sit for thirty minutes in an eight hour day and stand/walk for thirty minutes. Plaintiff would have marked environmental restrictions. She would need to lie down or elevate her legs hourly and would have difficulty with ambulation and standing. AR 295-296, 297.

1   Plaintiff returned to Dr. Orme in December 2008. He diagnosed degenerative joint
2   disease in the lower back and chronic bronchitis. AR 425.
3   On January 14, 2009, Plaintiff saw Dr. Orme and complained of numbness and tingling in
4   her right thumb for the past three days. On examination, she was in distress and had pain and
5   arthritis in her bones/joints. Plaintiff's right thumb was tender to palpation with crepitus and
6   redness. He diagnosed degenerative joint disease in the lower back, chronic bronchitis and
7   complaints of neuropathy and pain in her right thumb. He prescribed Lyrica, Vicodin, Soma and
8   a cough medicine with codeine. AR 424.
9   Plaintiff returned to Dr. Orme in February 2009. There are no detailed examination
10  notes, though he added the diagnosis of bilateral carpal tunnel syndrome. He refilled Plaintiff's
11  medications and noted that she declined surgery. AR 423.

ALJ's Findings

13  The ALJ determined that Plaintiff had the severe impairments of lumbar degenerative
14  disc disease, asthma, obesity and status post fracture of the right tibia. AR 13. Despite these
15  impairments, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to
16  lift and carry twenty pounds occasionally, ten pounds frequently, with no climbing of ladders,
17  ropes or scaffolds. She could occasionally stoop, crouch and climb ramps or stairs, and could
18  frequently balance, kneel and crawl. Plaintiff would have to avoid concentrated exposure to
19  fumes, dust, odors, gases and poor ventilation and must be allowed to sit or stand at will
20  throughout the day. AR 14. With this RFC, the ALJ determined that Plaintiff could perform a
21  significant number of jobs in the national economy. AR 18.

**SCOPE OF REVIEW**

23  Congress has provided a limited scope of judicial review of the Commissioner's decision
24  to deny benefits under the Act. In reviewing findings of fact with respect to such determinations,
25  the Court must determine whether the decision of the Commissioner is supported by substantial
26  evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla,"
27  *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v.*
28  *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that she has a physical or mental impairment of such severity that she is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(g). Applying the process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of her disability; (2) has an impairment or a combination of impairments that is considered "severe" (lumbar degenerative disc disease, asthma, obesity and status post fracture of the right tibia) based on the requirements in the Regulations (20 CFR §§ 404.1520(c), 416.920(c)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix

1, Subpart P, Regulations No. 4; (4) has no past relevant work; but (5) can perform jobs that exist in significant numbers in the national economy.  AR 13-18.

Here, Plaintiff argues that the ALJ (1) improperly rejected Dr. Orme's November 2008 opinion; and (2) failed to provide sufficient reasons for rejecting her testimony.

## DISCUSSION

A.  Analysis of Medical Opinions

Plaintiff first argues that the ALJ improperly rejected Dr. Orme's November 2008 opinion that she could not work.

The opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant.  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir.1998); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1995).  Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record.  *Lester*, 81 F.3d at 830.  Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record.  *Id.* (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983)).  This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989).  The ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors', are correct.  *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir.1988).  Therefore, a treating physician's opinion must be given controlling weight if it is well-supported and not inconsistent with the other substantial evidence in the record.  *Lingenfelter v. Astrue*, 504 F.3d 1028 (9th Cir. 2007).

In *Orn v. Astrue,* 495 F.3d 625 (9th Cir. 2007), the Ninth Circuit reiterated and expounded upon its position regarding the ALJ's acceptance of the opinion an examining physician over that of a treating physician.  "When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not '"substantial evidence."'  *Orn,* 495 F.3d at 632; *Murray, 722*

F.2d at 501-502. "By contrast, when an examining physician provides 'independent clinical findings that differ from the findings of the treating physicians, such findings are 'substantial evidence.'" Orn, 496 F.3d at 632; Miller v. Heckler, 770 F.2d 845, 849 (9th Cir.1985). Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, see Allen v. Heckler, 749 F.2d 577, 579 (9th Cir.1985), or (2) findings based on objective medical tests that the treating physician has not herself considered, see Andrews, 53 F.3d at 1041.

If a treating physician's opinion is not giving controlling weight because it is not well supported or because it is inconsistent with other substantial evidence in the record, the ALJ is instructed by Section 404.1527(d)(2) to consider the factors listed in Section 404.1527(d)(2)-(6) in determining what weight to accord the opinion of the treating physician. Those factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. 20 C.F.R. 404.1527(d)(2)(i)-(ii). Other factors include the supportablility of the opinion, consistency with the record as a whole, the specialization of the physician, and the extent to which the physician is familiar with disability programs and evidentiary requirements. 20 C.F.R. § 404.1527(d)(3)-(6). Even when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is "still entitled to deference." SSR 96-2p; Orn, 495 F.3d at 632-633. "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p; Orn, 495 F.3d at 633.

Here, the ALJ was presented with opinions from numerous sources. Plaintiff's treating physician, Dr. Orme, opined in November 2008 that Plaintiff could not work. Consultive examiner Dr. Damania opined that Plaintiff could perform light work. State Agency physician Dr. Jackson believed that Plaintiff could perform light work with additional limitations.

The ALJ ultimately adopted the opinions of both Dr. Damania and Dr. Jackson in finding that Plaintiff could perform light work with restrictions. AR 17. He therefore rejected the

opinion of the treating physician in favor of the opinion of the examining and non-examining physicians.

In discussing Dr. Orme's opinion, the ALJ first notes that it was set forth on a "form questionnaire" and that there was "no explanation, no reasoning and no discussions to support such a restrictive assessment." AR 17. As the ALJ correctly noted, Dr. Orme's belief that Plaintiff cannot perform any work is not fully supported nor explained. He states that Plaintiff's primary impairment is degenerative joint disease of the lumbar spine and knees and lists the objective evidence in support of his opinion as x-rays and physical examinations. AR 17. The x-rays in evidence do not necessarily support such an extreme opinion. While x-rays in 2003 show scoliosis, Dr. Orme's opinion is based on Plaintiff's degenerative joint disease. AR   To that end, x-rays of her lumbar spine taken in December 2007 show normal height and no changes of the lumbar vertebrae that could be adequately viewed. December 2007 x-rays of her right knee were negative. AR 449.

As to Dr. Orme's citation to his physical examinations, a majority of his treatment notes do not include any examination findings. When there are findings recorded, the symptoms do not necessarily support Dr. Orme's extreme opinion. For example, Dr. Orme notes a decreased range of motion in the back and tenderness in the back, each only mentioned once. AR 446. He also notes pain and swelling in bones/joints, though this is not further specified. AR 446. A brief and conclusionary form opinion which lacks supporting clinical findings is a legitimate reason to reject a treating physician's conclusion. *Magallenes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Plaintiff contends that Dr. Orme's opinion was supported based on his treatment from October 2006 through February 2009. The simple fact that Plaintiff treated with Dr. Orme, however, does not lend credence to an otherwise unsupported opinion.

The ALJ next rejects Dr. Orme's opinion that Plaintiff cannot work because such a finding is an "issue that is reserved for decision by the Commissioner." AR 17. A statement by a physician indicating a claimant is "disabled" does not mean that the Secretary will concur, absent review of medical findings and other evidence. 20 C.F.R. 416.927(e). Plaintiff contends

that this is not the correct legal standard. The ALJ's rejection of a finding reserved for the Commissioner is not a "standard," however, but is one factor that can support the ALJ's requirement of setting forth "specific and legitimate" reasons for rejecting Dr. Orme's opinion.

Having rejected Dr. Orme's opinion, the ALJ adopted the opinions of Dr. Damania and Dr. Jackson as consistent with the overall record. AR 17. Dr. Damania relied on his own clinical findings, many of which resulted from tests not performed by Dr. Orme. For instance, pulses, coordination and gait/station were normal, her joints had no ankylosis, deformities, subluxations, contracture or signs of acute or chronic inflammation. Dr. Damania found no objective evidence for spasms and no scoliosis. Straight leg raising was normal and her sensory exam was normal. Plaintiff had normal range of motion in her wrists and grip strength was 5/5. Phalen sign was negative. AR 251-252. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (noting that contrary opinion of examining source constituted "specific and legitimate reason" for rejecting opinion of a treating source); *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) ("Where the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict.")

Similarly, the ALJ properly adopted the additional restrictions suggested by Dr. Jackson. Although the ALJ cannot rely on a non-examining physician's opinion alone to reject a treating source opinion, it may be cited in conjunction with other evidence. Here, in addition to citing the State Agency physician's opinion, the ALJ cited Dr. Damania's opinion and the unsupported nature of Dr. Orme's opinion. *E.g., Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir.1989); *Andrews*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir.1995).

Accordingly, the ALJ's treatment of the medical evidence was supported by substantial evidence and free of legal error.

C.      Plaintiff's Credibility

Finally, Plaintiff contends that the ALJ failed to set forth sufficient reasons for rejecting her subjective testimony.

In *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007), the Ninth Circuit summarized the pertinent standards for evaluating the sufficiency of an ALJ's reasoning in rejecting a claimant's subjective complaints:

> An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989). However, to discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide "'specific, cogent reasons for the disbelief.'" *Morgan,* 169 F.3d at 599 (quoting *Lester,* 81 F.3d at 834). The ALJ must "cit[e] the reasons why the [claimant's] testimony is unpersuasive." *Id*. Where, as here, the ALJ did not find "affirmative evidence" that the claimant was a malingerer, those "reasons for rejecting the claimant's testimony must be clear and convincing." *Id*.
>
> Social Security Administration rulings specify the proper bases for rejection of a claimant's testimony. . . An ALJ's decision to reject a claimant's testimony cannot be supported by reasons that do not comport with the agency's rules. *See* 67 Fed.Reg. at 57860 ("Although Social Security Rulings do not have the same force and effect as the statute or regulations, they are binding on all components of the Social Security Administration, ... and are to be relied upon as precedents in adjudicating cases."); *see Daniels v. Apfel,* 154 F.3d 1129, 1131 (10th Cir.1998) (concluding that ALJ's decision at step three of the disability determination was contrary to agency regulations and rulings and therefore warranted remand). Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Fair,* 885 F.2d at 603; *see also Thomas,* 278 F.3d at 958-59.

The ALJ set forth Plaintiff's testimony in detail. AR 15-16. Contrary to Plaintiff's assertion, the ALJ relied on more than one reason to reject her allegations. He began with the only explanation that Plaintiff challenges the inconsistencies between her testimony and her written statements in the August 2006 function report. AR 16. For example, the ALJ states that Plaintiff reported in 2006 that she cannot sleep without medication, but she testified that she does not sleep at night and that sleeping pills do not help. AR 16, 54-55, 172. In addition, the ALJ compared Plaintiff's 2006 statement that she could lift fifteen pounds with her testimony that she could not lift ten pounds. AR 16.

While an ALJ is entitled to examine a claimant's inconsistent statements, the Court questions whether the statements are actually inconsistent and whether the ALJ should have compared written statements that were almost three years old with her current testimony. Despite this, the remaining credibility analysis, which Plaintiff does not challenge, supports the ALJ's conclusion. *Carmickle v. Comm'r, Soc. Sec. Admin.,* 533 F.3d 1155, 1162-1163 (9th Cir. 2008); *Batson v. Barnhart*, 359 F.3D 1190, 1197 (9th Cir. 2004) (upholding ALJ's credibility determination even though one reason may have been in error).

The ALJ next explains that despite Plaintiff's claims of severe depression and anxiety, Plaintiff only receives treatment from her primary care physician. AR 17. Although she sought mental health treatment in the past, she believed that it did not help. The ALJ concluded that if Plaintiff's mental health impairments were as severe as she alleged, "she would have sought further medications and counseling which she knew were available to her." AR 17.

Similarly, Plaintiff testified to being short of breath daily, but she has not sought treatment for shortness of breath for over a year. AR 17, 442. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (ALJ is permitted to consider lack of medical treatment in assessing credibility).[2]

The ALJ further notes that Plaintiff's lifetime earnings are less than $8,000. AR 17. Plaintiff was 39 years old at the time of the hearing and last worked during the summer months of 1991. AR 41, 44. In other words, Plaintiff has had at least 20 years to perform work activity but has only worked for three months. Certainly, the ALJ can take this into consideration in assessing her overall credibility. *Thomas v. Barnhart*, 278 F.3d 947, 958-959 (9th Cir. 2002)

---

[2] The Court recognizes that in certain instances, the ALJ should not rely on lack of treatment in rejecting a claimant's credibility. For example, an ALJ should generally allow a claimant to explain why she has not sought treatment. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). The Ninth Circuit has also cautioned against questioning a claimant's credibility based on a failure to seek treatment for a mental health impairment. *Nguyen v. Chater*, 100 F.3d 1462, 1065 (9th Cir. 1996).

Here, however, Plaintiff continued to receive treatment for other impairments but did not continuously complain of shortness of breath. As to her mental health treatment, this was not an instance where Plaintiff did not recognize her symptoms and therefore delayed in seeking treatment. Plaintiff previously received treatment from Fresno County Mental Health but did not believe that it helped. AR 62 63.

(ALJ properly relied on the fact that the claimant had an "extremely poor work history" and "has shown little propensity to work in her lifetime.")

Finally, the ALJ explained that the opinion evidence and objective evidence did not support Plaintiff's allegation that she could not perform any work.  AR 17.  Medical evidence may be cited in a credibility determination where, as here, it is not the only reasons relied upon. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996).

Based on the above, the ALJ's credibility analysis is supported by substantial evidence and is free of legal error.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Dorothy Denise Murray.

IT IS SO ORDERED.

Dated: __May 16, 2011__        _____/s/ Dennis L. Beck_____
                              UNITED STATES MAGISTRATE JUDGE